## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CORPORAL ISAAC D. LEVINE,

      Plaintiff,

      v.

WASHINGTON NATIONAL
INSURANCE COMPANY,

      Defendant.

CIVIL ACTION NO. 1:15-CV-02334

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is an action by a policyholder against his insurer for breach of contract and for the statutory tort of bad faith. The plaintiff, Corporal Isaac D. Levine, is a police officer with the Swatara Township Police Department. Corporal Levine purchased an accidental death and dismemberment policy with an individual short-term disability benefit from the defendant, Washington National Insurance Company ("Washington National"). In December 2012, Corporal Levine suffered a cervical spinal injury while at work—when lifting a heavy patrol bag, he reportedly felt a pop or pull in his back and neck area, followed by immediate and severe pain in his shoulder and upper back area. In February 2013, Levine submitted a written claim form to Washington

National for payment of benefits under the accident insurance policy. Washington National denied coverage under the policy on the ground that the incident did not constitute a covered accident, as it was not a sudden, unexpected, and unforeseen event.

On November 9, 2015, Levine filed this lawsuit in the Court of Common Pleas for Dauphin County, Pennsylvania. On December 3, 2015, the defendant removed the action to federal court on the basis of diversity jurisdiction.[1]

On March 22, 2017, Washington National filed its motion for summary judgment, together with a statement of material facts and a brief in support. (Doc. 43; Doc. 44; Doc. 45). On April 11, 2017, Corporal Levine filed his response to the motion, together with a counter-statement of material facts and a brief in opposition to summary judgment. (Doc. 47: Doc. 48; Doc. 49). On April 25, 2017, Washington National filed its reply brief. (Doc. 51). The matter is now ripe for disposition.

---

[1] Originally, Washington National was joined by a second named defendant—its corporate parent, CNO Financial Group, Inc. ("CNO"). CNO was subsequently dismissed by stipulation and the case caption was amended to reflect Washington National as the only proper defendant in this action.

## I.  LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient

disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599

(M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II.  MATERIAL FACTS

On or about March 6, 2009, Corporal Levine applied for an accident insurance policy with Washington National. At the time, he was employed as a police officer with the Swatara Township Police Department. He was later promoted to police corporal.

On May 1, 2009, Washington National issued "Accidental Death and Dismemberment Policy with Disability Individual" number XXXXXXX882 (the "Policy") to Levine in accordance with his application. The Policy pays certain cash benefits directly to the policyholder in the event of a Covered Accident. For example, the Policy pays up to $800 for a ruptured disc, up to $100 for physician's visits, and up to $400 for physical therapy. The Policy also provides short term disability benefits, but the parties dispute the total amount of coverage afforded under this provision. On or about January 4, 2011, Corporal Levine submitted a second application on the Policy, adding his wife as an insured as well.

On December 21, 2012, Corporal Levine claims to have accidentally

injured himself "while lifting a heavy patrol bag and feeling a pop or pull in his back and neck area accompanied by immediate and severe pain in his shoulder and upper back area."

On February 15, 2013, Levine submitted a completed Accidental Injury / Sickness Claim Form, together with medical treatment records and a physician statement. This first claim submission reported December 21, 2012, as the "date of incident," and reflected the receipt of medical treatment for a strain or sprain of the plaintiff's cervical spine and trapezius areas on three separate dates: December 24, 2012;[2] January 2, 2013; and January 7, 2013. The submitted materials indicate that Corporal Levine was prescribed non-steroidal anti-inflammatory medication and pain medication, an MRI was conducted, and he was referred to orthopedics and to physical therapy with a "no patrol duties" work restriction. On or about February 23, 2013, Washington National

_____

[2] The physician statement included an initial handwritten date-of-service of "12/4/2012," which the plaintiff contends was a scrivener's error. Other medical records document a date-of-service of December 24, 2012, and the very same form reports a date-of-incident of December 21, 2012. Based on this, a reasonable jury could agree that "12/4/2012" was a scrivener's error, and that Levine first received medical treatment for this injury on December 24, 2012. For summary judgment purposes, we must accept this interpretation of the evidence.

sent Levine an Explanation of Benefits denying his claim on the stated

ground that the "service/treatment [are] not covered by your policy," based

on a finding that there was "no accident" and explaining that "[a]n

Accident means a sudden, unexpected, and unforeseen event."[3]

On March 1, 2013, Levine submitted a photocopy of the same

completed Accidental Injury / Sickness Claim Form, together with an

invoice for physical therapy services. The submitted materials indicate

that Corporal Levine received 14 sessions of physical therapy between

January 29 and February 27, 2013. On or about March 5, 2013,

Washington National sent Levine an Explanation of Benefits denying his

claim on the stated ground that there was "no accident" and explaining

that "[a]n Accident means a sudden, unexpected, and unforeseen event."

On March 15, 2013, Levine submitted a physician statement from his

orthopedic surgeon. The submitted materials reflected that Corporal

Levine received treatment for neck pain on four separate dates: January 9,

---

[3] Corporal Levine testified at his deposition that he was unsure of the precise date when he received his first notice of claim denial, but he recalled that it occurred before his first telephone call to Washington National. Thus, based on the evidence of record, Levine received notice of the denial of his claim for benefits no later than March 21, 2013, the date when Washington National's claim records document receipt of his first telephone call.

2013; January 25, 2013; February 15, 2013; and March 15, 2013. The documentation further indicates that Corporal Levine received an epidural injection in the course of this treatment. On or about March 22, 2013, Washington National sent Levine an Explanation of Benefits denying his claim on the stated ground that the "service/treatment [are] not covered by your policy," based on a finding that there was "no accident" and explaining that "[a]n Accident means a sudden, unexpected, and unforeseen event."

Between January 4 and April 21, 2013, Corporal Levine worked "light duty" at the police department. While on light duty, Levine was able to review paperwork, conduct document research, make and take phone calls, hold pre-tour briefings, attend departmental meetings, and interact with people who came into the police department to file police reports, but he was unable to perform any patrol duties. He was not permitted to drive, to take statements from informants or suspects, to advise individuals of rights and processes, to mediate disputes, to attend court, to collect evidence and substances from the street, or to be placed into antagonistic environments because he could not wear a uniform or defend himself. While on light duty, Corporal Levine was not paid any less for his work

time, but he was unable to earn overtime pay for court hearings.

Between April 22, 2013, and September 29, 2013, Corporal Levine was out of work completely on doctor's orders, and during this time period he received temporary total disability workers compensation benefits. On July 8, 2013, Levine underwent disc replacement surgery.

On September 30, 2013, Corporal Levine returned to work with a "light duty" restriction. On December 17, 2013, Levine was cleared to return to work on full-duty status, which he did on December 20, 2013.

On November 20, 2013, Washington National received an "appeal of claim denial" letter from counsel representing Corporal Levine. On January 28, 2014, Washington National responded to Levine's attorney, upholding its denial of benefits.

On November 9, 2015, Corporal Levine filed this lawsuit, seeking the following policy benefits, plus punitive damages, attorney fees, and interest: (a) $800 for suffering a ruptured disc; (b) $100 for physician visits; (c) $400 for physical therapy visits; and (d) 1/30th of his monthly pay or $208.36 per day for 349 days of disability, totaling $72,717.64.

## III.    DISCUSSION

In his complaint, Corporal Levine has asserted claims against

Washington National for breach of contract and for the statutory tort of bad faith, actionable under 42 Pa. Cons. Stat. Ann. § 8371.[4] Washington National has moved for partial summary judgment. With respect to the bad faith claim, Washington National contends it is entitled to summary judgment because: (1) Levine's bad faith claim is barred by the applicable statute of limitations; (2) Washington National had reasonable basis for the denial of coverage—the notation in his original physician statement suggesting that he received medical treatment on December 4, 2012, more than two weeks before the incident in which Levine claimed to have been injured; and (3) Washington National had an additional, independent reasonable basis for denial of coverage—that Levine was not in fact totally disabled. With respect to the breach of contract claim, Washington National contends that it is entitled to summary judgment because: (1) Levine failed to give Washington National notice of his claim or proof of loss as required by the Policy; (2) there is no evidence that Levine was totally disabled within 90 days after the alleged accidental injury as

_____

[4] The complaint also asserted statutory claims under the Pennsylvania Vehicle Code, 75 Pa. Cons. Stat. §§ 1798 and 1716. Those claims have been voluntarily dismissed with prejudice pursuant to a stipulated order. (Doc. 50).

required by the Policy; and (3) Levine's claim for disability benefits is limited to payment of $2,000 per month for a maximum of twelve months. Washington National has not moved for summary judgment with respect to Levine's claims for ruptured disc, physician's visit, and physical therapy benefits under the Policy.

### A. Statutory Bad Faith Claim

In Count II of the complaint, Corporal Levine has asserted a statutory bad faith claim, brought pursuant to 42 Pa. Cons. Stat. Ann. § 8371. This statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. Under Pennsylvania law,

> the term bad faith includes any frivolous or unfounded refusal to pay proceeds of a policy. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing),

> through some motive of self-interest or ill will; mere
> negligence or bad judgment is not bad faith. Therefore, in
> order to recover under a bad faith claim, a plaintiff must
> show (1) that the defendant did not have a reasonable
> basis for denying benefits under the poicy; and (2) that
> the defendant knew or recklessly disregarded its lack of
> reasonable basis in denying the claim.

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)

(citations and internal quotation marks omitted). "These two elements—

absence of a reasonable basis for denying a claim under the policy and

knowledge or reckless disregard of the lack of such reasonable basis—must

be proven by clear and convincing evidence." *Cozzone v. AXA Equitable*

*Life Ins. Soc. of the U.S.*, 858 F. Supp. 2d 452, 458 (M.D. Pa. 2012) (citing

*Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.

1997)).

Section 8371 does not itself include a limitations period, and the

Supreme Court of Pennsylvania has not yet addressed the issue, but

Pennsylvania's federal courts have previously held that the state's two-

year tort statute of limitations applies to a bad faith action brought under

42 Pa. Cons. Stat. Ann. § 8371. *Skirica v. Nationwide Ins. Co.*, 416 F.3d

214, 223–24 (3d Cir. 2005); *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236

(3d Cir. 2003); *Cozzone*, 858 F. Supp. 2d at 458; *CRS Auto Parts, Inc. v.*

*Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 364–65 (E.D. Pa. 2009);

*McCullough v. Nw. Mut. Life Ins. Co.*, No. 2:05cv0105, 2007 WL 4440954,

at *3–*4 (W.D. Pa. Oct. 24, 2007). Moreover, these precedents hold that

the limitations period for a § 8371 claim commences when the insurer first

provides definite notice of its denial of coverage. *See Sikirica*, 416 F.3d at

224; *Cozzone*, 858 F. Supp. 2d at 458; *CRS Auto Parts*, 645 F. Supp. 2d at

365; *McCullough*, 2007 WL 4440954, at *3.

> "For purposes of applying Section 8371, one must look to
> the date on which the defendant insurance company first
> denied the insured's claim in bad faith.". . . [C]ontinuing
> denials of coverage after the initial denial of coverage do
> not give rise to separate acts of bad faith. To that end, an
> insured "may not separate initial and continuing refusals
> to provide coverage into distinct acts of bad faith." Thus,
> where an insurer clearly and unequivocally puts an
> insured on notice that he or she will not be covered under
> a particular policy for a particular occurrence, the statute
> of limitations begins to run and the insured cannot avoid
> the limitations period by asserting that a continuing
> refusal to cover was a separate act of bad faith.

*CRS Auto Parts*, 645 F. Supp. 2d at 365 (quoting *Adamski v. Allstate Ins.
Co.*, 738 A.2d 1033, 1040, 1042 (Pa. Super. Ct. 1999)) (citations omitted).

Here, Washington National's February 23, 2013, Explanation of

Benefits unambiguously informed the plaintiff of its denial of coverage.

The plaintiff's subsequent efforts to obtain clarification or reconsideration

of this coverage denial by Washington National are immaterial; his right to institute and maintain suit based upon the insurer's "frivolous or unfounded" refusal to pay benefits under the Policy accrued upon receipt of Washington National's Explanation of Benefits dated February 23, 2013. *See Cozzone*, 858 F. Supp. 2d at 458–59; *McCullough*, 2007 WL 4440954, at *4. While the precise date upon which he received notice is not clear, at the latest, Corporal Levine received notice of Washington National's denial of coverage on or before March 21, 2013. The plaintiff commenced this action on November 9, 2015, more than two years and seven months later.

Accordingly, the plaintiff's statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. § 8371 is barred by the applicable two-year statute of limitations, and the defendant is thus entitled to summary judgment on Count II as a matter of law.[5]

---

[5] In his opposition brief, Corporal Levine suggests, in the alternative, that he has asserted a common-law claim for breach of the implied contractual duty to act in good faith, which is subject to a four-year statute of limitations. But Count II of the complaint explicitly pleads a statutory tort claim under 42 Pa. Cons. Stat. Ann. § 8371 only. To the extent Corporal Levine seeks recovery on a common-law bad faith claim, any such claim is merged with and subsumed within his broader breach of contract claim asserted in Count I of the complaint. *See Cozzone*, 858 F. Supp. 2d at 456–57; *CRS Auto Parts*, 645 F. Supp. 2d at 369–70. Washington National has not moved for summary judgment with respect to any such common-
*(continued on next page)*

## B. Breach of Contract Claim

The interpretation of an insurance policy is a question of law properly decided by the Court. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Principles of insurance policy interpretation are well-settled in Pennsylvania, and are governed by the rules of contract interpretation. *See Watkins*, 198 F.3d at 103–04; *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 986 (Pa. Super. Ct. 1986). "Those principles include the following: (1) the terms of the insurance policy must be given their ordinary meaning; (2) a term is ambiguous only if reasonably intelligent men, on considering it in the context of the entire policy, would honestly differ as to its meaning; and (3) the parties' true intent must be determined not only from the language but from all the circumstances." *State Farm Fire & Cas. Co. v. Bellina*, 264 F. Supp. 2d 198, 202 (E.D. Pa. 2003). "In determining coverage under an insurance contract, the focus is on the reasonable expectations of the insured and any ambiguous provisions in the policy should be construed in favor of the

---

law bad faith claims, at least not separate from its request for summary judgment on the plaintiff's disability claims in general.

insured ." *Id.* at 203.

## 1. Failure to Provide Notice of Claim

Washington National contends that it is entitled to summary judgment on the ground that Corporal Levine failed to provide it with notice of his disability claim or proof of loss as required by the Policy. Washington National contends that the Policy requires that the policyholder provide it with a notice of claim and proof of loss, and that "[t]here is no evidence that Levine ever gave Washington National such notice or proof of any disability claim."

The Policy includes a section setting forth "Claim Provisions":

> NOTICE OF CLAIM: Written notice of claim must be given to Us within 60 days after the start of a Loss or as soon as reasonably possible. The notice must be sent to Us at Our Administrative Office. The notice should include the Insured's name, and the Policy number.

> CLAIM FORMS: When We receive written notice of a claim, We will send forms for filing Proof of Loss. If We do not send these forms within 15 days, You will meet the Proof of Loss requirements by giving Us a written statement of the nature and extent of the Loss within the time stated in the Proof of Loss provision.

> PROOF OF LOSS: You must give Us satisfactory written Proof of Loss within 90 days after the Loss for which You are seeking benefits. . . .

> If this Policy provides for periodic payments for continuing Loss, written Proof of Loss must be given to

Us within 90 days after the end of each period for which We are liable.

One or more of the following together with Your written statement may be required as Proof of Loss:

- completed Company claim forms;
- marriage certificate, and death certificates;
- a Pathologist's report;
- a Physician's statement;
- itemized bills for services rendered;
- Hospital, medical and Physician records;
- autopsy report; and,
- medical and pharmaceutical receipts.

Under the Policy, "Loss" is defined as "a specified event due to a Covered Accident for which We pay benefits under this Policy or any riders attached. For disability benefits, Loss means each full Day of Total Disability." "Accident" is defined as "a sudden, unexpected and unforeseen event," and "Covered Accident" is defined as "an Accidental Injury that occurs while You are insured under this Policy and which is not excluded in this Policy." "Accidental Injury" is defined as "accidental bodily injuries sustained by the Insured Person which are the direct and independent cause of the loss and occur while the Policy is in force." Finally, the Policy defines "Totally Disabled" or "Total Disability" as "the period of time during which You are wholly and continuously unable to perform physical tasks that You can normally do and such inability prevents You from

engaging in the material and substantial duties of Your regular occupation."

On February 15, 2013, less than 60 days after the December 21, 2012, incident in which he was injured, Corporal Levine submitted his initial written notice of claim on a preprinted claim form furnished by Washington National. On that form, he checked a box provided to indicate that he was filing a claim for accidental injury. He provided his name and the Policy number, as required. He checked another box indicating that the accident occurred at work. At the bottom of the form, he affixed his signature and dated it "12/28/12." The preprinted form furnished by Washington National did not instruct or otherwise prompt the claimant to identify any particular accident benefits he or she requested for payment under the Policy, but merely to provide preliminary information to the insurer of the existence and nature of the claim.

In support of his claim, Corporal Levine attached medical treatment records and a physician statement to his completed Company claim form. The medical records were completed by Thomas Ladley, PA-C, the physician assistant who treated Levine. PA Ladley's treatment notes informed Washington National that he had seen Levine for treatment on

December 24, 2012, January 2, 2013, and January 7, 2013. PA Ladley's notes informed the insurer that Corporal Levine's upper left back and neck area had been injured on December 21, 2012, and that Levine had advised PA Ladley that, while lifting a heavy patrol bag at work, Levine felt a pop/snap or pull in his upper back.

The medical records informed the insurer that, on December 24, 2012, Levine was examined and an x-ray of his cervical spine was performed. Based on this examination, PA Ladley recorded a diagnosis of a sprained or strained neck and prescribed naproxen and physical therapy, with Levine to return for a follow-up appointment about a week later.

The medical records informed the insurer that, on January 2, 2013, PA Ladley saw Levine for a follow-up exam. Based on this examination, PA Ladley recorded a diagnosis of a sprained or strained neck and prescribed a work restriction of "no patrol duties" until MRI results came back. PA Ladley also completed a physician statement on January 2, 2013, in which he reported the two visits,[6] his diagnosis of a cervical spine and

---

[6] As previously noted, the physician statement references dates-of-service of "12/4/12" and "1/2/13" rather than December 24, 2012, and January 2, 2013. Washington National contends that this reference to "12/4/12" demonstrates treatment for the complained-of injury prior to the

*(continued on next page)*

trapezius sprain, and his prescription of physical therapy, non-steroidal anti-inflammatory medication, and an MRI, and he described the cause of Levine's injury as the lifting of a patrol bag on December 21, 2012.

The medical records informed the insurer that, on January 7, 2013, PA Ladley saw Levine for a third exam. Based on this examination, PA Ladley recorded a diagnosis of a sprained or strained neck, provided Levine with a prescription for tramadol (an opioid pain medication used to treat moderate to moderately severe pain), referred him to an orthopedic specialist for further treatment, and prescribed a work restriction of "no patrol duties" until Levine could be seen by an orthopedist.

Eight days after it received Corporal Levine's written notice of claim, Washington National sent him an Explanation of Benefits denying coverage based on a finding that there was "no accident" and explaining that "[a]n Accident means a sudden, unexpected, and unforeseen event."[7]

_____

claimed accident on December 21, 2012. Corporal Levine contends that the "12/4/12" notation is the result of a scrivener's error, which should have been recorded as "12/24/12" instead. In support, Levine has pointed to his medical treatment records, which document treatment on December 24, 2012, and none on December 4, 2012. For summary judgment purposes, we must accept Levine's construction of the evidence.

[7] We note that Washington National has not moved for summary judgment on this theory of coverage, presumably in recognition that a
*(continued on next page)*

Washington National did not send Levine any forms for filing Proof of Loss, as permitted by the terms of the Policy, but denied coverage outright based on the materials submitted by Corporal Levine.

On March 1, 2013, less than 90 days after the December 21, 2012, incident in which he was injured, Corporal Levine resubmitted the same preprinted claim form that he had submitted on February 15, 2013,[8] but with different attachments in support of his claim. In this second claim submission, Corporal Levine submitted an itemized invoice for physical therapy services he received between January 29, 2013, and February 27, 2013. Four days after it received Corporal Levine's second claim submission, Washington National sent him an Explanation of Benefits denying coverage based on a finding that there was "no accident" and explaining that "[a]n Accident means a sudden, unexpected, and unforeseen event." Once again, Washington National did not send Levine any forms for filing Proof of Loss, as permitted by the terms of the Policy, but denied coverage outright based on the materials submitted by

genuine dispute of material fact exists as to what constitutes an "accident" under the Policy. *See, e.g.*, *Simson v. Commercial Travelers Mut. Accident Ass'n of Am.*, 32 N.Y.S.2d 615, 615–16 (N.Y. App. Div. 1942).

[8] This claim form was identical to the first one. It appears to be a photocopy of the same form.

Corporal Levine.

On March 15, 2013, less than 90 days after the December 21, 2012, incident in which he was injured, Corporal Levine submitted an additional physician statement, completed by John Grandrimo, DO, an orthopedic surgeon who treated Corporal Levine. The physician statement informed Washington National that Dr. Grandrimo had seen Corporal Levine for treatment on four occasions: January 9, 2013; January 25, 2013; February 15, 2013; and March 15, 2013. In his physician statement, Dr. Grandrimo reported his diagnosis of cervicalgia and his treatment of Corporal Levine with an epidural steroid injection, and he described the cause of Levine's injury as the lifting of a 40 to 50 pound bag at work on December 21, 2012, at which time Levine reportedly noticed some increasing pain in his neck and felt a pop in the back of his neck.[9] Seven days after it received Corporal Levine's third claim submission, Washington National sent him

_____

[9] Washington National also notes that Dr. Grandrimo's physician statement was accompanied by a "sickness claim form" prepared by a medical assistant and signed by Dr. Grandrimo. Next to a question on the form asking "[w]as patient disabled?" a box labeled "No" had been checked. We find this assessment by Dr. Grandrimo or his medical assistant immaterial for summary judgment purposes as it is accompanied by no explanation at all, nor anything to suggest that the medical providers were familiar with the Policy's definition of "disability."

an Explanation of Benefits denying coverage based on a finding that there was "no accident" and explaining that "[a]n Accident means a sudden, unexpected, and unforeseen event." Once again, Washington National did not send Levine any forms for filing Proof of Loss, as permitted by the terms of the Policy, but denied coverage outright based on the materials submitted by Corporal Levine.

Based on the evidence of record, a reasonable jury could find in favor of the plaintiff on this issue. As instructed by the terms of the Policy, Corporal Levine provided Washington National with a "completed Company claim form" within 60 days after the start of his period of disability due to an accidental bodily injury, which occurred on December 21, 2012. This written notice included his name and Policy number. In support of his claim, and within 90 days after the start of his period of disability, Corporal Levine submitted two physician statements, medical records documenting several physician office visits, and an itemized bill for physical therapy services. These materials informed Washington National of the nature and extent of Corporal Levine's injury and its effect on his ability to work. In particular, the medical reports informed the insurer that Levine had been placed on a "no patrol duties" work restriction as a

result of his injury.[10] Although the materials submitted by Corporal Levine did not specify that he sought payment of disability benefits—or any other particular benefit afforded by the Policy—neither the Policy nor the form itself required Levine to do so. The written materials submitted to Washington National by Corporal Levine were sufficient to provide the insurer with timely notice that he asserted a claim to whatever benefits were payable under the Policy, and timely proof of loss as well.

Thus, summary judgment must be denied on this basis.

## 2. Total Disability Within the 90-Day Period

Washington National contends that it is entitled to summary judgment on the ground that Corporal Levine has failed to adduce any evidence that he was totally disabled within 90 days after the alleged accidental injury as required by the Policy.

The Policy provides a short-term disability benefit of $2,000 per month for up to twelve months.[11] Under the Policy,

[t]he Policyowner will be eligible for this benefit, as

---

[10] As discussed below, whether this constitutes "total disability" under the terms of the Policy is a matter for a jury to decide.
[11] The parties dispute both the monthly and maximum amount of the short-term disability benefit afforded under the Policy. We address that issue in the following section.

shown in the Benefit Schedule, if employed at least 27.5 hours per week at the time the Covered Accident occurs and if, as the result of an Accidental Injury, the Policyowner is:

- Totally Disabled within 90 Days of the Covered Accident; and,

- being cared for on a regular basis (at least monthly) by a Physician. . . .

As noted above, the Policy defines "Totally Disabled" or "Total Disability" as "the period of time during which You are wholly and continuously unable to perform physical tasks that You can normally do and such inability prevents You from engaging in the material and substantial duties of Your regular occupation."

Corporal Levine was removed from work altogether by his physician on April 22, 2013, more than 90 days after the December 21, 2012, incident in which he was injured. Between January 4, 2013, and April 21, 2013, Corporal Levine was permitted by his doctor and by his employer to work on "light duty" status. He was able to perform some, but not all, of his normal job duties while on light duty.

Washington National argues that, because Corporal Levine was able to perform some of his job duties while on light duty, he was not "totally disabled" under the Policy within the applicable 90-day period, and thus

he was not entitled to payment of short-term disability benefits under the Policy. In particular, Washington National notes that Levine was able to perform five-and-a-half of the Swatara Township Police Department's 18 "Law Enforcement Essential Job Functions" applicable to all police positions, and several of the Department's "Essential Duties and Responsibilities" applicable to the position of Police Corporal. In response, Corporal Levine argues that although he was able to perform some of the administrative duties of a police officer or police corporal, he was unable to perform the core physical labor required for a police officer to be effective— he was unable to drive or go out on patrol, to interact with the accused or with his subordinates in a tactical environment, or to face antagonistic situations and be prepared to physically defend himself or others while enforcing the law and safeguarding the public.

In *Cobosco v. Life Assurance Co. of Pa.*, 213 A.2d 369 (Pa. 1965), the Supreme Court of Pennsylvania addressed a similar situation in which the proprietor of a hardware store, who was only able to perform some of less strenuous job duties she had previously performed as a hardware merchant before her injury, sought to collect benefits under a disability policy. The *Cobosco* court stated:

We have consistently refused to attribute an unreasonable intent to the parties by construing such clauses to mean that an insured could not recover 'total disability' benefits if he were able to participate in the occupation under consideration only in the slightest degree, regardless of its insignificance in relation to the occupation as a whole. Accordingly, irrespective of the literal meaning of such clauses, an insured is not 'barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals . . . .' On the other hand, it is also well established that the inability of the insured to personally do everything required in carrying on the occupation, or do all things he did before his disability, or do the things he did before in precisely the same manner does not *ipso facto* establish 'total disability.' Similarly, the inability of the insured to perform any or most of the physical labor required by an occupation which necessitates such efforts, among others, does not, *ipso facto*, establish 'total disability.' And the inability of the insured to work in as continuous a manner as a fully able person does not, *ipso facto*, establish 'total disability.'

. . . [W]here, as here, the question of 'total disability' must be decided in the context of the ability of the insured to perform the acts or duties necessary to [his usual occupation], . . . the insured must prove that the personal efforts that he himself is capable of making in the operation of the business are insubstantial and unimportant, by reason of their low quality or quantity, in relation to the character and amount of work required to carry on the business.

*Id.* at 372–73 (citations omitted). *Cobosco* has been applied in cases involving policy language similar to that at issue here. *See Klay v. AXA*

*Equitable Life Ins. Co.*, Civil Action No. 09-12, 2010 WL 3885117, at *12–*14 (W.D. Pa. Sept. 28, 2010) (policy defined "total disability" as the "inability due to injury or sickness to engage in the substantial and material duties of your regular occupation"); *Fleishman v. Gen. Am. Life Ins. Co.*, 839 A.2d 1085, 1088–89 (Pa. Super. Ct. 2003) (policy defined "totally disabled" as "unable to perform all the material and substantial duties" of a given occupation).

Washington National relies on *Klay* and another case, *DiTommaso v. Union Cent. Life Ins. Co.*, Civ. A. No. 89-6323, 1991 WL 249977 (E.D. Pa. Nov. 25, 1991), *aff'd*, 972 F.2d 1330 (3d Cir. 1992) (table decision). Both *Klay* and *DiTommaso* involved surgeons who were no longer able to perform more complex surgeries, but who continued to practice medicine and perform simpler surgical procedures. In both cases, that was sufficient for the court to conclude that no reasonable jury could find that the policyholders were totally disabled.

But we find the facts of *Cobosco* and *Fleishman* more akin to those presented in this case. While on light duty status, Corporal Levine was able to perform some administrative duties of his position in an office setting, but he was unable to perform any of the physically demanding

duties required of a patrol officer or a police corporal out in the field. Corporal Levine is not totally disabled as a matter of law merely because he cannot perform any or most of the physical work required of his position, but a jury might reasonably find that his light office duties were not great enough to make his contribution substantial and important in relation to the total amount and character of the work typically required to conduct police operations as a patrol officer or police corporal in Swatara Township. *See Fleishman*, 839 A.2d at 1089–90; *Cobosco*, 213 A.2d at 374; *see also Koshy v. Ohio Nat'l Life Ins. Co.*, 2009 WL 1325424, at *1 (E.D. Pa. May 12, 2009) ("[W]hether or not a claimant is disabled within the meaning of an insurance policy is an issue of fact, to be decided by a jury.").

Thus, summary judgment must be denied on this basis.

### 3. *Maximum Disability Benefit Available*

Washington National contends that it is entitled to summary judgment with respect to the amount of short-term disability benefits available under the Policy. In particular, Washington National contends that the Policy provides a short-term disability benefits payment of $2,000 per month for up to twelve months—a maximum of $24,000 in total short-

term disability benefits—as opposed to the plaintiff's claim for a total of $72,717.64 in short-term disability benefit payments (1/30th of Levine's monthly pay or $208.36 per day for 349 days of disability).

As noted above, the Policy provides for payment of a short-term disability benefit as shown in a Benefit Schedule attached to the Policy. The Benefit Schedule lists various benefit payments afforded under the Policy, including the following:

> **24 Hour Accident Short Term**          $2,000
> **Disability Benefit**—Policyowner
> only maximum benefit of 12
> months

In the body of the Policy this disability benefit is described as follows:

> 24 HOUR ACCIDENT SHORT TERM DISABILITY BENEFIT: The Policyowner will be eligible for this benefit, as shown in the Benefit Schedule, if employed at least 27.5 hours per week at the time the Covered Accident occurs and if, as the result of an Accidental Injury, the Policyowner is:
>
> - Totally Disabled within 90 Days of the Covered Accident; and
>
> - being cared for on a regular basis (at least monthly) by a Physician. This requirement is waived if the Physician states that maximum recovery has been reached and continued future treatment is of no benefit.
>
> We will pay this benefit beginning with the first full Day of the Policyowner's total disability.

If the eligible Policyowner is not Totally Disabled for a full month, We will pay benefits for each full Day of Total Disability during the Policyowner's eligibility for this benefit. Daily benefits will be paid at the rate of 1/30 of the monthly amount.

If the Policyowner becomes Totally Disabled again due to the same type of bodily injury within six (6) months of the end of a period during which the Policyowner was Totally Disabled, We will treat this disability as the same disability.

The maximum benefit period for a covered disability is 12 months.

. . . .

For reasons that are not entirely clear, Corporal Levine seeks disability benefits in the amount of "1/30 of his monthly pay or $208.36 per day for 349 days of disability, totaling $72,717.64." Washington National seeks summary judgment with respect to the amount of short-term disability benefits available under the Policy. Washington National contends that the disability benefit is limited to $2,000 per month for a maximum of 12 months, and that disability benefits may be paid for any partial months at the rate of 1/30 of that $2,000 monthly benefit per day (approximately $66.67 per day).

Although it might have been clearer if the Benefit Schedule explicitly stated that the "$2,000" disability benefit was a monthly amount,

considered in the context of the entire Policy—particularly in light of the Policy's discussion of this benefit in terms of a "full month" and a prorated benefit payment for periods less than a month at a rate of "1/30 of the monthly amount" per day—the only reasonable interpretation of the "$2,000" disability benefit described on the Benefit Schedule is a benefit payment of $2,000 *per month*, for a period of up to twelve months at most.

The plaintiff's proposed construction of this benefit is not reasonable. There is nothing in the Policy to suggest any relationship whatsoever between the disability benefit and the policyholder's monthly income. Moreover, the plaintiff's construction renders the stated disability benefit of "$2,000" entirely superfluous.

Accordingly, Washington National is entitled to partial summary judgment with respect to the maximum amount of disability benefits available under the Policy. We find that the Policy affords, at most, a short-term disability benefit of $2,000 per month for up to twelve months from the date of the Covered Accident (or a maximum of $24,000). In the context of the undisputed material facts of this case, Corporal Levine may

recover no more than a maximum of $23,000 in total disability benefits.[12]

## IV. CONCLUSION

For the foregoing reasons, Washington National's motion for partial summary judgment (Doc. 43) will be granted in part and denied in part.

With respect to Count I of the complaint, partial summary judgment will be granted in favor of Washington National with respect to the maximum amount of disability benefits available under the Policy. We find that, as a matter of law, the Policy affords short-term disability benefit payments of $2,000 *per month* for a maximum period of twelve months after a Covered Accident, and in the context of the undisputed material facts of this case, Corporal Levine may recover no more than a maximum of $23,000 in total disability benefits.

With respect to the balance of Washington National's arguments in favor of partial summary judgment on Count I of the complaint, the

---

[12] Levine began "light duty" status on January 4, 2013, and he returned to full duty status with 12-hour shifts on December 20, 2013—a total of 349 days. Under the Policy, Levine may be entitled at most to 11 full months of disability benefits at $2,000 per month, plus 15 prorated days of disability benefits ($1,000), for a total of $23,000 in disability benefit payments. This is the maximum disability benefit to which Corporal Levine might be entitled—the actual duration of his period of "total disability," if any, is a matter for a jury to decide.

motion for partial summary judgment will be denied.

With respect to Count II of the complaint, summary judgment will be granted in favor of Washington National on the ground that the plaintiff's statutory bad faith claim is barred by the applicable statute of limitations.

In light of the Court's dispositive ruling on Count II of the complaint, Washington National's motion *in limine* (Doc. 52) will be denied as moot.

An appropriate Order will follow.

Dated: March 16, 2018        ***s/ Joseph F. Saporito, Jr.***
                                 JOSEPH F. SAPORITO, JR.
                                 United States Magistrate Judge